**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM DIVISION**

LINDSEY WALTERS,
an individual,

                                          Case No.:

      Plaintiff,

v.

NRA GROUP, LLC,
a foreign limited liability company,
TRANS UNION LLC,
a foreign limited liability company,

      Defendants.
_____/

## COMPLAINT

**COMES NOW**, Plaintiff, LINDSEY WALTERS (hereinafter, "Plaintiff"), by

and through the undersigned counsel, and hereby files this Complaint against

Defendants, NRA Group, LLC, (hereinafter, "NRA"), and TRANS UNION LLC

(hereinafter, "Trans Union") (hereinafter collectively, "Defendants"). In support

thereof, Plaintiff states:

## PRELIMINARY STATEMENT

1.    This is an action brought by an individual consumer for damages for

NRA and Trans Union's violations of the Fair Credit Reporting Act, 15 United States

Code, Section 1681 *et seq*. (hereinafter, the "FCRA") wherein Defendants improperly

attempted to credit-report and subsequently verified its credit reporting of an alleged

balance owed on Plaintiff's consumer credit report and in Plaintiff's consumer credit

1

file as maintained by Trans Union that was created or allegedly incurred as a result of identity theft and fraud.  More specifically, despite Plaintiff repeatedly advising NRA that she did not personally open the alleged account, did not authorize the opening of the alleged account, did not use the alleged account, and did not benefit from the account in any way—and after Plaintiff disputed NRA's reporting of such erroneous information directly to Trans Union —NRA *continued* to report the fraudulent accounts with significant balances due and past-due.

2.      Furthermore, this is an action for damages for Trans Union's violations of the FCRA wherein Trans Union continued to incorrectly report Plaintiff as the individual responsible for the alleged accounts after Plaintiff repeatedly disputed and advised that any balance allegedly owed was a result of identity theft and fraud.

3.      Additionally, this is an action for damages brought by an individual consumer for NRA's violations of the Florida Consumer Collection Practices Act, Chapter 559, Florida Statutes (hereinafter, the "FCCPA") and Fair Debt Collection Practices Act, 15 United States Code, Section 1692 (the "FDCPA") wherein NRA attempted to collect a consumer debt directly from Plaintiff that Plaintiff did not owe.

## JURISDICTION, VENUE & PARTIES

4.      Jurisdiction of this Court arises under 28 United States Code, Section 1331, pursuant to the FCRA, 15 United States Code Section 1681, *et seq*.

5.      Defendants are subject to the jurisdiction of this Court as Defendants each regularly transact business in this District.

6.      At all material times herein, Plaintiff is a natural person residing in Palm

Beach County, Florida.

7.     At all material times herein, NRA is a foreign limited liability company with its principal place of business located at 2491 Paxton Street, Harrisburg, Pennsylvania, 17111.

8.     At all material times herein, Trans Union is a foreign limited liability company existing under the laws of the state of Delaware with its principal place of business located at 555 West Adams Street, Chicago, Illinois 60661.

## FCRA STATUTORY STRUCTURE

9.     Congress enacted the FCRA requiring consumer reporting agencies to adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information.  *See* 15 United States Code, Section 1681b.

10.     Under the FCRA, whenever a consumer reporting agency prepares a consumer report, it shall follow reasonable procedures to assure *maximum possible accuracy* of the information concerning the individual about whom the report relates. *Id.* at § e(b) (emphasis added).

11.     Under the FCRA, if a consumer disputes the completeness or accuracy of any item of information contained in a consumer's file, and the consumer notifies the agency directly of such dispute, the agency shall reinvestigate—free of charge— and report the current status of the disputed information, or delete the item from before the end of the 30-day period beginning on the date on which the agency receives notice

3

of the consumer's dispute.  *Id.* at § i(a).

12.     Under the FCRA, when a consumer reporting agency conducts any reinvestigation with respect to disputed information in the file of any consumer, the consumer reporting agency shall review and consider all relevant information submitted by the consumer. *Id.* at § i(a)(4).

13.     Under the FCRA, if, after any reinvestigation of any information disputed by a consumer, an item of information is found to be inaccurate, incomplete, or cannot be verified, the consumer reporting agency shall promptly delete that item of information from the consumer's file or modify that item of information, as appropriate, based on the results of the reinvestigation.  *Id.* at § i(a)(5)

14.     Under the FCRA, any person who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer: in an amount equal to the sum of any actual damages sustained by the consumer as a result of the failure; for statutory damages of not less than $100 and not more than $1,000; for such amount of punitive damages as the court may allow; and for the costs of the action together with reasonable attorneys' fees.  *Id.* at § n.

15.     Under the FCRA, any person who is negligent in failing to comply with any requirement imposed with respect to any consumer is liable to that consumer in an amount equal to the sum of any actual damages sustained by the consumer as a result of the failure and the costs of the action together with reasonable attorneys' fees.  *Id.* at § o.

## FCCPA AND FDCPA STATUTORY STRUCTURE

19.     The FCCPA is a state consumer protection statute, modeled after the FDCPA, a statute designed to prohibit unfair, deceptive, and abusive practices in the collection of consumer debts as well as to protect against the invasion of individual privacy.  15 U.S.C. §§ 1692(a) and (e); Fla. Stat. §§ 559.55 and 559.77(5).

20.     The FDCPA imposes civil liability on any debt collector—and the FCCPA imposes liability on any creditor/person as well as any debt collector—who "regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due to another" and both statutes prohibit engaging in particular violative conduct in connection with collecting consumer debts.  15 U.S.C. § 1692(a)(6); Fla. Stat. § 559.55(5).

21.     Specifically, the FDCPA and FCCPA prohibit unlawful debt collection "communication" with consumer debtors, which is defined as "the conveying of information regarding a debt directly or indirectly to any person through any medium." 15 U.S.C. § 1692(a)(2); Fla. Stat. § 559.55(2) (emphasis added).

22.     For example, the FDCPA prohibits a debt collector from using false, deceptive, or misleading representations or means in connection with the collection of any consumer debt. See 15 U.S.C. §§ 1692(d)-(e).

23.     Similarly, the FCCPA prohibits a person from attempting to collect a consumer debt that is known to be illegitimate. See Fla. Stat. §§ 559.72 (9).

## GENERAL ALLEGATIONS

21.     At all material times herein, Plaintiff is an alleged "consumer" or

"debtor" as defined by the FCRA, Section 1681a(c) and the FCCPA, Section 559.55(8) and the FDCPA, Section 1692a(3) because she is an individual and allegedly obligated to pay a debt.

22.     At all material times herein, NRA, by and through its subsidiaries, regularly extends credit—and credit reports debts associated with the same—allegedly owed by consumers residing in Palm Beach County, Florida.

23.     At all material times herein, NRA reports information concerning alleged collections accounts that were opened as a result of identity theft and fraud, including the tradeline Account through Sterling Emergency Services of Miami Beach PA, referenced by Account No.: 56920507, Hereinafter, the "Account").

24.     At all material times herein, NRA attempts to collect an alleged consumer debt, including but not limited to, a balance allegedly owed for a medical debt owed on an emergency service on February 8, 2021 in the amount of $2,518.00, (hereinafter, the "Alleged Debt").

25.     At all material times herein, Plaintiff did not open the Account, Plaintiff did not authorize any individual or entity to open the Account in her name, Plaintiff did not use the Account in any manner, and Plaintiff did not receive the benefit of any goods or services as a result of any transactions made using the Account.

30.     At all material times herein, NRA uses interstate mail and the principal purpose of its business is to collect debt.

31.     At all material times herein, NRA is a "person" who furnishes information to credit reporting agencies as provided in the FCRA and as defined by

15 United States Code, Section 1681s-2.

32.     At all material times herein, NRA is a "person" subject to the FCCPA, Section 559.72. *See* Fla. Stat. § 559.55(3); *Schauer v. General Motors Acceptance Corp.*, 819 So. 2d 809 (Fla. 4th DCA 2002).

33.     At all material times herein, NRA's conduct, with regard to the Alleged Debt complained of below, qualifies as "communication" as defined by the FCCPA, Section 559.55(2) and the FDCPA, Section 1692a(2).

34.     At all material times herein, NRA furnishes information to Equifax, Experian, and Trans Union regarding the Account and the corresponding Alleged Debt.

35.     At all material times herein, NRA furnishes, reports, and publishes specific details of consumers alleged outstanding or delinquent debt accounts to compel or coerce the consumer to either satisfy an alleged balance owed, or suffer the consequences of delinquent accounts, such as higher interest rates on consumer loans or complete denial of credit.

36.     At all material times herein, Equifax, Experian, and Trans Union are each is a "consumer reporting agency" as defined in 15 United States Code, Section 1681a(f) of the FCRA and Defendants regularly engage in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of furnishing consumer reports.  Defendants disburse such consumer reports to third parties under contract for monetary compensation.

37.     At all material times herein, Defendants act themselves or through their

agents, employees, officers, members, directors, successors, assigns, principals, trustees, sureties, subrogees, representatives, third-party vendors, and insurers.

38.     All necessary conditions precedent to the filing of this action occurred, or Defendants waived or excused the same.

## FACTUAL ALLEGATIONS

39.     During or about April of 2025, Plaintiff obtained her Trans Union credit report and therein was notified that NRA had reported an alleged medical debt to Trans Union in the amount of $2,518.00 referenced by Account No.: 56920507 in Plaintiff's name.

40.     The alleged debt dated back to an emergency room visit on February 8, 2021.

41.     At this point in time, Plaintiff had never seen the debt before, had never agreed to the debt, and had never been billed for the alleged debt.

42.     The Alleged debt began with Sterling Emergency Services, was later transferred to CF Medical LLC, and finally the debt was acquired by Defendant, NRA.

43.     Plaintiff has never known or heard of NRA, CF Medical LLC, or Sterling Emergency Services with whom the debt began, or any balance associated with the emergency medical visit supposedly related to the debt.

44.     Plaintiff did not consent to medical treatment, nor did she enter into any contract with the emergency services provider at any point in 2021.

45.     Plaintiff has never signed anything, acknowledged any charges, or

presented with a bill and at no point did any of these entities notify Plaintiff, contact Plaintiff, or provide Plaintiff with documentation regarding the debt.

46.   After viewing the error on her Trans Union report, Plaintiff immediately submitted a formal dispute through Trans Union's online dispute portal.

47.   Shortly after Plaintiff's dispute, Trans Union marked the account as "verified as accurate" without providing Plaintiff with any evidence or explanation to support this contention.

48.   Plaintiff received three e-mails to her google e-mail account from what appears to be Trans Union using the following e-mail address: transunion@em-tuci.transunion.com.

49.   The e-mails were each sent to Plaintiff's e-mail address on April 26, 2025, and again on April 30, 2025 and notified Plaintiff that her dispute results were received.

50.   The latter e-mail incorrectly notified Plaintiff that per her request the disputes she previously filed were deleted.

51.   In an effort to obtain proper verification from Trans Union, Plaintiff sent a certified dispute letter on or about May of 2025 where she identified the Account by the proper name and file number previously provided in her Trans Union report.

52.   Trans Union responded with a letter stating that no such NRA account was listed on Plaintiff's report.

53.   Unfortunately, the Account remained on Plaintiff's Trans Union credit report and continued to affect her credit profile.

54.     Plaintiff later contacted Trans Union by phone to resolve the discrepancy where she was spoke with a representative who did not provide answers to the verification dispute and Plaintiff was later disconnected from the call with Trans Union representative.

55.     After Plaintiff called Trans Union a second time, a new representative advised her to submit a formal complaint to the Consumer Financial Protection Bureau.

56.     Plaintiff drafted and submitted a Consumer Financial Protection Bureau complaint against Trans Union on June 23, 2025 regarding the mishandling of the unverified debt collection Account from NRA.

57.     Plaintiff later realized her Trans Union Account had been deactivated without her knowledge.

58.     Plaintiff later called Trans Union who advised her that her Trans Union profile had been deactivated and prompted Plaintiff to create a new Account.

59.     Plaintiff then sent a certified letter to NRA on June 4, 2025 seeking validation of the alleged debt and proof of transfer from Sterling Emergency Services where the alleged debt began to CF Medical LLC and later to NRA.

60.     The letter Plaintiff sent via certified mail was delivered to NRA's registered agent on June 9, 2025.

61.     Plaintiff did not receive a response from NRA.

62.     Plaintiff has never received another communication from NRA, including but not limited to a bill, an itemized statement, or any written validation

notice as required under the Fair Debt Collection Practices Act.

63.     NRA did not respond to Plaintiff's request and the account remained on her credit report, harming her ability to secure federal financial aid.

64.     As a result and fearing that someone possessed her personal information and may again attempt to apply for credit in her name, Plaintiff utilized any resource available to her for aid, including filing a formal complaint with the Better Business Bureau on June 23, 2025, referenced by case # 23505415.

65.     NRA responded to the complaint by stating false statements of fact and misrepresentations regarding the alleged debt.

66.     NRA failed to send Plaintiff any validation within the required 30-day window and continued reporting the debt to the CRAs.

67.     In each of Plaintiff's disputes, Plaintiff advised Trans Union that the Alleged debt did not belong to Plaintiff and she was not associated with these charges.

68.     As a result of Plaintiff's exhaustive dispute efforts the Account was finally removed from Plaintiff's credit report.

## NRA'S DEBT COLLECTION COMMUNICATIONS

69.     On or about February of 2025, NRA allegedly sent an email to Plaintiff in its attempt to collect an alleged medical debt for an emergency room visit in February of 2021.

70.     The e-mail was sent to Plaintiff's spam folder and from an unfamiliar digital sender and was not recognized by Plaintiff.

71.     More specifically NRA's collection letter asserted that Plaintiff owed a

balance of $2,518.00 for the alleged date of service.

72.     Plaintiff had never authorized electronic communications with NRA nor Trans Union and therefore had not thought to check her spam folder for further communication regarding the Account at issue.

73.     Plaintiff has never received a letter in the mail to her home address regarding the alleged Account.

74.     NRA's conduct, as described above, is a knowing, willful, and continuing violation of Plaintiff's rights, as enumerated under Florida state and federal law.

75.     Given NRA's conduct and its apparent intention and ability to continue to collect the Alleged Debt directly from Plaintiff in violation of said debt collection laws, Plaintiff has no adequate remedy at law.

76.     Plaintiff needs and is entitled to injunctive relief with respect to NRA's debt collection communications in violation of the FCCPA.

77.     NRA's conduct served no purpose other than to abuse and harass Plaintiff into paying the Alleged Debt, leading Plaintiff to believe that despite not owing the Alleged Debt personally, Plaintiff had no choice but to pay the Alleged Debt or continue to endure NRA's unlawful debt collection practices.

## DAMAGES

78.     As a result of Defendants' reporting of the Alleged Debt, Plaintiff further dealt with the stress and anxiety of feeling hopeless, believing that she would be denied credit as a result of the erroneous and incorrect reporting of the Accounts reflecting the Alleged Debt asserted as owed by Plaintiff if she needed to obtain credit in the near

future, and that Plaintiff would either be denied credit or pay higher interest rates in the event she could obtain financing.

79.     As a result of Defendants' conduct, actions, and inactions, Plaintiff was deterred from making credit applications as she believed she would not be able to obtain favorable credit terms as a result of Defendants' derogatory and continued reporting of the Accounts with balances past-due, she did not wish to further damage her credit score with futile credit inquires, and she was continually evaluated for credit using consumer reports that reported the Accounts with late payment information resulting in the Accounts being reported as a derogatory, negative, or adverse accounts.

80.     Plaintiff is a graduate student and applied for Federal student aid in the form of a Direct PLUS loan and was denied as a result of a credit check with Trans Union, where a collections account as the source of derogatory status was listed.

81.     Overall, Plaintiff suffered damage to her reputation as a result of Defendants' conduct.

82.     Further, as a result of Defendants' actions, Plaintiff suffered emotional distress, anxiety, inconvenience, frustration, annoyance, fear, and confusion, believing that despite Plaintiff's exhaustive efforts to convey to Defendants that she did not initiate or authorize the opening of the Account including supplying Defendants with supporting documentation, Plaintiff must simply endure Defendants' reporting of the Accounts and NRA's ongoing attempts to collect the Alleged Debt.

83.     Plaintiff retained Swift Law, PLLC for the purpose of pursuing this

matter against Defendants, and Plaintiff is obligated to pay her attorneys a reasonable fee for their services.

84.     The FCRA, Sections 1681n or 1681o, or both, provide for the award of up to $1,000.00 statutory damages, actual damages, punitive damages, as well as an award of attorneys' fees and costs to Plaintiff, should Plaintiff prevail in this matter against Defendant.

**COUNT ONE**
**FAIR CREDIT REPORTING ACT –**
**VIOLATION OF 15 UNITED STATES CODE, SECTION 1681e(b)**
**(As to Trans Union Only)**

Plaintiff re-alleges paragraphs one (1) through eighty-four (84) as if fully restated herein and further states as follows:

85.     Trans Union is subject to and violated the provisions of, 15 United States Code, Section 1681e(b), by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files published and maintained concerning Plaintiff.

86.     Trans Union willfully and/or negligently failed to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's credit reports.

87.     More specifically, Trans Union generated and published credit reports regarding Plaintiff which included erroneous information that does not belong to Plaintiff.

88.     More specifically, Trans Union reported a collection account furnished

by National Recovery Agency, identified by account number: 56920507, (hereinafter, "The Account"), citing the provider as Sterling Emergency Services.

89.     Such reporting is false and evidences Trans Union's failure or follow reasonable procedures to assure the maximum possible accuracy of Plaintiff's credit reports and credit file.

90.     The Account *never* should have been included on Plaintiff's consumer report, yet Trans Union wrongfully included the Account on Plaintiff's credit reports and in Plaintiff's credit file.

91.     Plaintiff has never received a bill from the original medical provider in regard to the date of emergency services in question.

92.     Plaintiff had not received any communication, billing statement, validation notice, or correspondence from the original creditor, CF Medical LLC or National Recovery Agency, and thus had no way of knowing of the existence of the Account.

93.     As such, it is inaccurate and/or materially misleading to report the Account on Plaintiff's consumer reports at any time.

94.     Overall, Defendants willfully and/or negligently failed to establish or follow reasonable procedures to assure maximum possible accuracy of Plaintiff's credit reports and credit files.

95.     As a result of Defendants' conduct, actions, and inactions, Plaintiff suffered damage to her credit reputation and credit worthiness, suffered emotional distress, anxiety, inconvenience, frustration, annoyance, fear, and confusion.

96.     Further, Plaintiff dealt with the stress and anxiety of feeling hopeless from being denied credit and loan approval as a result of the erroneous and incorrect reporting of the Account, and that Plaintiff would pay higher rates in the event Plaintiff was approved.

97.     Defendants' actions were a direct and proximate cause of, as well as a substantial factor in, the serious injuries, damages, and harm to Plaintiff as stated herein.

98.     Trans Union's violations of 15 United States Code Section 1681e(b), constitute negligent or willful noncompliance-or both-with the FCRA, and entitle Plaintiff to actual damages, statutory damages, punitive damages, as well as attorneys' fees and costs as enumerated in 15 United States Code, Sections 1681n, or 1681o, or both.

**COUNT TWO:**
**FAIR CREDIT REPORTING ACT –**
**VIOLATION OF 15 UNITED STATES CODE, SECTION 1681i _et seq_.**
**(As to Trans Union only)**

Plaintiff re-alleges paragraphs one (1) through eighty-four (84) as if fully restated herein and further states as follows:

99.     Trans Union is subject to, and violated the provisions of, 15 United States Code, Section: 1681i(a)(1), by failing to conduct reasonable re-investigations of Plaintiff's disputes to determine whether the disputed information was inaccurate and by failing to subsequently update the inaccurate information in Plaintiff's credit reports and credit files; 1681i(a)(4), by failing to review and consider all relevant information

received in Plaintiff's disputes, including all relevant attachments; and 1681i(a)(5) by failing to update or delete any information that was the subject of Plaintiff's disputes found to be inaccurate or that could not be verified.

100.    Specifically, Trans Union willfully and/or negligently refused to properly re-investigate Plaintiff's consumer reports upon receiving Plaintiff's disputes, as described herein.

101.    Overall, each of Plaintiff's disputes through the online portal coupled with subsequent formal complaints Plaintiff made through the Consumer Financial Protection Bureau and the Better Business Bureau provided Trans Union with sufficient information and supporting documentation allowing Trans Union to identify that the Account was created as a result of identity theft and fraud, and therefore, should be deleted and removed from Plaintiff's credit reports and credit files.

102.    Trans Union failed to delete the Account from Plaintiff's credit report and credit file in response to Plaintiff's various disputes and failed to request documents from NRA's or CF Medical LLC's reporting of the Accounts.

103.    Given that Plaintiff did not personally open the Account, did not authorize anyone to open the Account in her name, and did not benefit from the Account in any way, and given that Trans Union did not request any documents from NRA's reporting of the Accounts, Trans Union could not reasonably verify that Plaintiff is personally responsible for the balance allegedly owed on the Account.

104.    Following Plaintiff's disputes, Trans Union continued to report the Accounts in Plaintiff's credit reports and files with significant balances due as well as

derogatory, late payment information, causing the Accounts to be reported as derogatory, negative, or adverse accounts.

105.   As such, Trans Union's re-investigations were not conducted in such a way as to assure whether information regarding Plaintiff and the Account was inaccurate and each failed to subsequently update and remove the inaccurate information in Plaintiff's credit reports and credit files.

106.   Such reporting is false and evidences Trans Union's failure to conduct reasonable re-investigations of Plaintiff's repeated disputes.

107.   Trans Union's reinvestigations of Plaintiff's disputes were not conducted reasonably.

108.   Trans Union's reinvestigations merely copied and relied upon the inaccurate information conveyed by NRA.

109.   Trans Union's reinvestigations of Plaintiff's disputes were not conducted in good faith.

110.   Trans Union's reinvestigation procedures are unreasonable.

111.   Trans Union's re-investigations of Plaintiff's disputes were not conducted using all information reasonably available to Trans Union.

112.   Trans Union's failure to review and reasonably consider all information received in Plaintiff's disputes—which clearly showed the Account was created as a result of identity theft and fraud—was done in bad faith.

113.   Trans Union's reinvestigations were *per se* deficient by reason of these failures in Trans Union's reinvestigations of Plaintiff's disputes and the Account.

114.   As a result of Trans Union's conduct, actions, and inactions, Plaintiff suffered damage to her credit reputation and credit worthiness, were deterred from making credit applications as she believed she would not be able to obtain favorable credit terms as a result of Defendants' derogatory and continued reporting of the Account, did not wish to further damage her credit score with futile credit inquires, and she was continually evaluated for credit using consumer reports that reported the Accounts with late payment information resulting in the Accounts being reported as derogatory, negative, or adverse accounts.

115.   Trans Union's actions were a direct and proximate cause of, as well as a substantial factor in, the serious injuries, damages, and harm to Plaintiff as stated herein.

116.   Trans Union's actions in violation of 15 United States Code, Section 1681i(a)(1), constitute negligent or willful noncompliance—or both—with the FCRA, and entitle Plaintiff to actual damages, statutory damages, punitive, damages, as well as attorneys' fees and costs enumerated in 15 United States Code, Sections 1681n or 1681o, or both.

**COUNT THREE:**
**UNLAWFUL DEBT COLLECTION PRACTICE –**
**VIOLATION OF FLORIDA STATUTES, SECTIONS 559.72(7) and (9)**
**(As to NRA Only)**

Plaintiff re-alleges paragraphs one (1) through eighty-four (84) as if fully restated herein and further states as follows:

117.   NRA is subject to, and violated the provisions of, Florida Statutes,

Section 559.72(7) by communicating with Plaintiff in an attempt to collect an alleged consumer debt through means which can reasonably be expected to abuse or harass Plaintiff and violated Florida Statutes, Section 559.72(9) by communicating with Plaintiff in an attempt to collect the Alleged Debt despite NRA possessing knowledge that the Alleged Debt is not legitimately owed by Plaintiff and by asserting the existence of a legal right that NRA knows does not exist.

118.    Specifically, as stated herein, Plaintiff was not and is not personally liable for the Alleged Debt, because: (i) Plaintiff did not personally apply for or receive a service linked to the Account, or open the Account; (ii) Plaintiff did not authorize any person to open the Account in Plaintiff's name or on Plaintiff's behalf; (iii) Plaintiff possessed no knowledge of the Account that was alleged opened until she received an alert on her credit reporting from Trans Union; and (iv) Plaintiff did not receive the benefit of any money, goods, or services from any charges or transactions made using the Accounts.

119.    As such, NRA possessed actual knowledge that Plaintiff did not legitimately owe the Alleged Debt, yet NRA continued to communicate directly with Plaintiff in an attempt to collect the Alleged Debt.

120.    More specifically, despite possessing knowledge that the Alleged Debt was not legitimately incurred by Plaintiff and therefore not legitimately owed by Plaintiff, NRA sent a collection email to Plaintiff demanding payment on the Alleged Debt.

121.    As such, NRA attempted to collect the Alleged Debt and asserted a legal

right that does not exist in its collection letter made in an attempt to collect the Alleged Debt from Plaintiff.

122.    Despite Plaintiff's exhaustive efforts advising that the Alleged Debt was the result of identity theft and fraud, NRA continued to communicate with Plaintiff in an attempt to collect the Alleged Debt.

123.    NRA's conduct served no purpose other than to abuse and harass Plaintiff into paying the Alleged Debt, leading Plaintiff to believe that despite not opening the Account personally nor authorizing another individual to open the Accounts in her name or make charges to the same, and despite receiving no benefit or service from the Account, NRA could and would continue to attempt to collect the Alleged Debt from Plaintiff unless and until Plaintiff paid the Alleged Debt in full.

124.    As a result of NRA's actions, Plaintiff suffered emotional distress, anxiety, inconvenience, frustration, annoyance, fear, and confusion, believing that despite not owing the Alleged Debt personally, Plaintiff must simply endure NRA's ongoing and invasive debt collection communications.

125.    NRA's willful violation of, *inter alia*, the Florida Consumer Collection Practices Act as a means to collect the Alleged Debt constitutes unlawful conduct and harassment as is contemplated under Florida Statutes, Sections 559.72(7) and 559.72(9).

126.    As a direct and proximate result of NRA's actions, Plaintiff sustained damages as defined by Florida Statutes, Section 559.77.

**COUNT FOUR:**
**UNLAWFUL DEBT COLLECTION PRACTICE –**
**VIOLATION OF 15 UNITED STATES CODE, SECTION 1692e, e(2)(A), and**
**e(10)**
**(As to NRA Only)**

Plaintiff re-alleges paragraphs one (1) through eighty-four (84) as if fully restated herein and further states as follows:

127.    NRA is subject to, and violated the provisions of, 15 United States Code, Section 1692e, e(2)(A), e(8), and e(10) by using false representations and deceptive means in attempting to collect the Alleged Debt, including by falsely representing the amount, legal status, or character of the Alleged Debt.

128.    Specifically, NRA possessed actual knowledge that the accounts were opened as the result of identity theft and fraud, that Plaintiff did not open the accounts or authorize any other individual to open the accounts in her name and likewise did not receive the benefits if any goods or services forming the basis of the Alleged Debt and Plaintiff repeatedly advised Defendants that she did not owe the Alleged Debt for such reasons.

129.    Despite knowing that Plaintiff did not owe the Alleged Debt, NRA sent at least one (1) email to Plaintiff asserting a balance owed by Plaintiff with respect to the Alleged Debt in its attempts to collect the Alleged Debt.

130.    Further, Plaintiff had never authorized electronic communication with NRA nor any other collection Agency or entity and as such she should have had communications from NRA be mailed directly to her address on file for Plaintiff's review and verification.

131. Moreover, NRA falsely and deceptively asserted that they could and would continue to collect the Alleged Debt from Plaintiff unless and until Plaintiff paid the Alleged Debt.

132. NRA's above-referenced conduct attempts to deceive and mislead Plaintiff into believing that Plaintiff must immediately make payment to NRA on the Alleged Debt or continue to endure NRA's unlawful collection attempts, the repetitive transfer of the Alleged Debt to a new debt collector, and potential derogatory credit reporting of the Alleged Debt as owed by Plaintiff personally.

133. As a direct and proximate result of NRA's actions, Plaintiff sustained damages as defined by 15 United States Code, Section 1692k.

**COUNT FIVE:**
**FAIR CREDIT REPORTING ACT –**
**<u>VIOLATION OF 15 UNITED STATES CODE, SECTION 1681s-2(b)</u>**
**(As to NRA Only)**

Plaintiff re-alleges paragraphs one (1) through eighty-four (84) as if fully restated herein and further states as follows:

134. NRA is subject to, and violated the provisions of, 15 United States Code, Section 1681s-2(b), by willfully and/or negligently publishing or furnishing inaccurate trade-line information within Plaintiff's credit reports, failing to fully and properly re-investigate Plaintiff's disputes, failing to review all relevant information regarding the same, and failing to request that Trans Union delete the Account from Plaintiff's credit report and credit file after re-investigating Plaintiff's repeated disputes.

135. As described above, Plaintiff was not and is not personally liable for the

Alleged Debt, because: (i) Plaintiff did not personally apply for the Account or open the Account; (ii) Plaintiff did not authorize any person to open to the Account in Plaintiff's name or on Plaintiff's behalf; (iii) Plaintiff possessed no knowledge of the Account that was alleged opened until she received an alert on her credit reporting through Trans Union; and (iv) Plaintiff did not receive the benefit of any money, goods, or services from any charges or transactions made using the Account.

136.    Despite Plaintiff not being responsible for the Alleged Debt, and despite NRA receiving notice of Plaintiff's disputes from Plaintiff and Equifax, Experian, and Trans Union —including the information and documents referenced in the above paragraph— NRA willfully and/or negligently failed to request that Trans Union delete the tradeline associated with the Account and continued to report derogatory, late payment information to Trans Union including significant balances due, as significantly past-due, and derogatory and/or negative payment history.

137.    Between April 2025 and August 2025, Plaintiff repeatedly disputed NRA's reporting of the Account Trans Union, and Trans Union forwarded Plaintiff's disputes to NRA.

138.    In response to Plaintiff's disputes, despite NRA receiving notice of Plaintiff's disputes from Trans Union, NRA failed to request that Trans Union delete the Account from Plaintiff's credit reports and credit files.

139.    Instead, NRA purportedly verified and/or updated its reporting of the Account including significant balances due, as significantly past-due, and with derogatory and/or negative payment history.

140.    NRA's refusal to request that Trans Union update its reporting of the Account as Plaintiff requested was intentionally, willfully, and knowingly done as NRA clearly possessed knowledge that the Alleged Debt was a result of identity theft and fraud.

141.    NRA's re-investigations were not conducted in good faith.

142.    NRA's re-investigations were not conducted reasonably.

143.    NRA's re-investigations were not conducted using all information and documents reasonably available to NRA.

144.    As a result of NRA's conduct, actions, and inactions, Plaintiff suffered damage to her credit reputation and credit worthiness, was deterred from making credit applications as she believed she would not be able to obtain favorable credit terms as a result of NRA's derogatory and continued reporting of the Account, did not wish to further damage her credit score with futile credit inquires, and she was continually evaluated for credit using consumer reports that reported the Account with late payment information resulting in the Account being reported as a derogatory, negative, or adverse account.

145.    Additionally, Plaintiff was denied twice after applying for a Grad Plus Loan from the Department Education as a direct result of this Account.

146.    NRA's conduct was a direct and proximate cause of, as well as a substantial factor in, causing the serious injuries, damages, and harm to Plaintiff as stated herein.

147.    NRA's actions in violation of 15 United States Code, Section 1681s-2(b),

constitute negligent or willful noncompliance, or both, with the FCRA, and entitles Plaintiff to actual damages, statutory damages, and punitive damages, as well as attorneys' fees and costs as enumerated in 15 United States Code, Sections 1681n or 1681o, or both.

## PRAYER FOR RELIEF

**WHEREFORE**, as a direct and proximate result of Defendants' conduct, Plaintiff respectfully requests an entry of:

    a.    Judgment declaring that NRA violated the FCCPA;

    b.    Judgment enjoining NRA from engaging in further conduct in violation of the FCCPA;

    c.    Judgment against NRA for maximum statutory damages under the FCCPA;

    d.    Judgment against NRA for maximum statutory damages for violations of the FDCPA;

    e.    Judgment against NRA and Trans Union for maximum statutory damages for violations of the FCRA;

    a.    Actual damages in an amount to be determined at trial;

    b.    Compensatory damages in an amount to be determined at trial;

    c.    Punitive damages in an amount to be determined at trial;

    d.    An award of attorney's fees and costs; and

    e.    Any other such relief the Court may deem proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues triable by right.

## SPOLIATION NOTICE AND DEMAND TO RETAIN EVIDENCE

Plaintiff hereby gives notice to Defendants and demands that Defendants and their affiliates safeguard all relevant evidence—paper, electronic documents, or data— pertaining to this litigation as required by law.

Respectfully submitted,

**SWIFT LAW PLLC**

*/s/ Jon P. Dubbeld*

Jon P. Dubbeld, Esq., FBN 105869
11300 4th Street N., Suite 260
St. Petersburg, FL 33716
Phone: (727) 300-1929
Fax: (727) 255-5332
jdubbeld@swift-law.com
jmurphy@swift-law.com
*Counsel for Plaintiff*